# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 8385 | **DATE** | 10/25/2001 |
| **CASE TITLE** | Jackson Rapid Delivery Service, Inc vs. Thomson Consumer Electronics, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The parties have filed cross motions for summary judgment on all counts. Defendant Thomson's motion is granted and plaintiff Jackson's motion is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | OCT 29 2001 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| WAH | courtroom deputy's initials | 01 OCT 25 PM 5:05 | date mailed notice |
| | Date/time received in central Clerk's Office | | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JACKSON RAPID DELIVERY SERVICE, INC., | ) ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) ) | No. 99 C 8385 |
| THOMSON CONSUMER ELECTRONICS, INC., | ) ) ) | DOCKETED OCT 2 9 2001 |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Jackson Rapid Delivery Service, Inc. (Jackson) has sued Thomson Consumer Electronics, Inc. (Thomson) for itself and for G.R. Trucking, Inc. (G.R.) for payments relating to shipments of Thomson's goods from January 1999 to May 1999. Jackson claims damages from breach of contract and requests equitable relief under a theory of *quantum meruit*. The parties have filed cross motions for summary judgment on all counts. For the following reasons, defendant Thomson's motion is granted and plaintiff Jackson's motion is denied.

## BACKGROUND

Most of the facts in this case are undisputed. Thomson is a shipper who contracted with a transportation broker, F.W.Myers and Company, Inc. (Myers), for transportation services. Myers would arrange with different motor contract carriers to do the actual carriage of Thomson's goods. Jackson and G.R. are two of the motor carriers selected by Myers for Thomson's shipments. Jackson and G.R. are now seeking payment for transportation of Thomson's goods from January 1999 through May 1999.

No one at Jackson or G.R. Trucking had direct contact with anyone from Thomson regarding the shipments at issue. Jackson and G.R. negotiated a flat rate for carriage with

Myers and received all information about pickup and deliveries from Myers. Jackson initially billed Myers for the shipments it now seeks to recover from Thomson. Jackson acknowledges that despite a history of Myers' payment delinquency, Jackson extended credit to Myers in 1999. In the spring of that year, an owner of Jackson met with Myers and set a credit limit, after which Jackson would no longer provide services for Myers.

For each of the shipments at issue Thomson issued a bill of lading to Myers which provided all of the information concerning the delivery specifics. The only information Jackson and G.R. drivers used in making deliveries was information from the bills of lading generated by Thomson. Each of the representative bills provided by the parties have signatures from a delivery driver. In the space labeled "carrier," there are a variety of handwritten entries, including "RDS," "JRDS," "GR Trucking," and "FWMYERS." Even though Myers did not perform any of the actual transportation of goods, "F.W.Myers" is typed into the space for "billing carrier" for each of the bills of lading at issue.

After each shipment was successfully completed, Myers would send Thomson the signed bills of lading along with Myers' freight bill. Thomson claims it paid Myers in full for all services provided in the transportation of the shipments at issue. Jackson claims it was never paid by Myers or Thomson for transporting the shipments, and that whatever payment Thomson may have made to Myers was only a brokerage fee and that Thomson is now liable to Jackson and GR for the motor carriage.

## DISCUSSION

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a

matter of law. Fed.R.Civ.P. 56(c); *see* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment a court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. Skorup v. Modern Door Corp., 153 F.3d 512, 514 (7th Cir.1998); *see* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists if there is sufficient evidence for a reasonable fact-finder to decide the issue in favor of the non-moving party on the particular issue. Eiland v. Trinity Hosp., 150 F.3d 747, 750 (7th Cir.1998). The mere existence of some alleged factual dispute between the parties, however, will not defeat summary judgment. Anderson, 477 U.S. at 247.

## Breach of Contract Claims (Counts I and III)

In counts I and III of its complaint, Jackson alleges that Thomson breached a contract when it did not pay Jackson or G.R. for carrier services. Thomson asserts that the undisputed facts demonstrate that a contract was never formed between itself and the motor carriers. Jackson argues that the bills of lading in each shipment constituted a direct contract between Thomson and the carriers, and that alternatively Myers acted as Thomson's agent when it arranged for transportation services.

In its cross motion for summary judgment, Jackson argues that each bill of lading provided by Thomson constitutes a separate contract between the parties and as a matter of law the provisions in the contracts make Thomson liable to the motor carriers for the transportation costs. Thomson asserts that the bills of lading served only as delivery receipts and do not represent an agreement between itself and the motor carriers.; also, that the other papers and circumstances in this case show that Thomson did not commit to paying the motor

carriers directly.

Put simply, a shipper will be liable to a contract carrier if it agreed to pay the carrier. Louisville & N.R. Co. v. Central Iron & Coal Co., 265 U.S. 59, 66, 44 S.Ct. 441, 443 (1924). To determine if there is a contractual promise to pay we look primarily to the bills of lading, bearing in mind that the instrument serves both as a receipt and as a contract. Id. The consignor, in this case Thomson, generally remains primarily liable unless the bill of lading or a course of dealing provides otherwise. Southern Pacific Transportation Co. v. Commercial Metals Co., 456 U.S. 336, 343, 102 S.Ct. 1815, 1820 (1982) (finding that failure to sign the non-recourse clause in the bill of lading left the shipper primarily liable).

Payment responsibility can be shifted to a third party, however. Missouri Pacific Railroad Co. v. Center Plains Industries, Inc., 720 F.2d 818 (5th Cir. 1982) (noting that the most typical way for a shipper to avoid liability for payment is through a non-recourse clause in the bill of lading). The parties are free to contract when and by whom the freight charges should be paid. C.A.R. Transportation Brokerage v. Darden Restaurants, Inc., 213 F.3d 474, 479 (9th Cir. 2000) citing Louisville & Nashville R.R. v. Central Iron & Coal Co., 265 U.S. 59, 66, 44 S.Ct. 441 (1924). At the same time, "[m]ere transmittal of payment from a shipper to a carrier by itself is insufficient evidence of a broker's acceptance of primary responsibility for unpaid transportation charges." Bankruptcy Estate of United Shipping Company, Inc. v. Tucker Company, 474 N.W.2d 835, 841 (Minn.App. 1991).

When a shipper pays the broker or freight-forwarder and the payments are not sent on to the carrier, one of two innocent parties will be the loser, and the courts have differed as to who that should be. See National Shipping Co. of Saudi Arabia v. Omni Lines, Inc., 106 F.3d 1544 (11th Cir. 1997). We conclude, based on the circumstances in this case, that

defendant has no obligation to pay again. In so concluding, we realize that we are edging toward, if not into, a factual determination. We recognize as well, however, that this is a non-jury case in which the parties have presented all the evidence available, they agree (or have no basis for disagreeing) as to the material facts, and resolution of the dispute depends not at all on any credibility determination.

The bills of lading generated by Thomson are ambiguous in that Myers is listed as the billing carrier and "Jackson" or "G.R.," or even "FWMYERS," is handwritten as the carrier. Myers' listing as the billing carrier does not in and of itself relieve Thomson from liability to the actual motor carriers. *See* Missouri Pacific, 720 F.2d at 819. It does raise questions about the payment arrangement, however, and as a result we must look beyond the bills of lading to determine whether Thomson, or Myers alone, is responsible for payment to the motor carriers. *See* ANR Freight System v. Weldbend Corporation, 1993 WL 88086, *3 (N.D.Ill. 1993).

The parties' separate interactions with Myers is most informative in determining the parties' responsibilities to each other. It is clear from the briefs, depositions and other materials that there was a contract between Thomson and Myers which provided that Thomson was to pay Myers for the shipments at issue. Jackson argues that this outside contract has no bearing on the relationship between Thomson and the motor carriers. It is also undisputed that Jackson and Myers had ongoing negotiated agreements regarding services and payment, including an extension of credit from Jackson to Myers. Jackson also claims that the credit and payment arrangements between itself and Myers do not bear upon the payment liability of Thomson. We disagree.

We believe the bills of lading in this case do not represent the complete agreement

between the parties. It is clear from the parties' actions and correspondence that the motor carriers expected to be paid by Myers and Myers expected to be paid by Thomson. Jackson dealt with Myers as an independent debtor and permitted balances to build up without any notification to Thomson. *See* ANR Freight System, *supra*. *See, also,* Farrell Lines, Inc. v. Titan Industrial Corp., 306 F.Supp. 1348, 1351 (S.D.N.Y. 1969), *affd.* 419 F.2d 835 (2d Cir. 1969), *cert. denied*, 397 U.S. 1042 (1970). Plaintiffs created the risk of loss by their credit practices, and, having accepted Myers as principal and obligor, they cannot now recast the transaction. *See* Consolidated Freightways Corporation of Delaware v. Admiral Corporation, 442 F.2d 56 (7th Cir. 1971).

There is also discussion in the briefs regarding the "filed rate" doctrine. This discussion is inapplicable to this case since it is undisputed that both Jackson and G.R. are motor contract carriers. Contract carriers are exempted from the filed rate doctrine. Brizedine v. Reliable Corporation, 152 B.R. 224, 226 (N.D.Ill. 1993).

Jackson contends that Myers was acting as Thomson's agent and had authority to enter into contracts on Thomson's behalf. An agency relationship can arise out of a principal giving actual or apparent authority to an agent. Actual authority may be express or implied. There is no express authority here; Thomson and Myers specifically labeled Myers an independent contractor in their contract.

Unlike express authority, implied authority can exist regardless of labels used in a written instrument. "Implied authority is that authority which is inferred from the words used, the customs, the nature of the authorization, or the relations of the parties." Kinesoft Development Corp. v. Softbank Holdings Inc., 2001 WL 184885, at *25, 139 F.Supp.2d 869 (N.D.Ill. 2001). In this case, Myers had independent control over picking the motor carriers, negotiating a rate with the carriers, supervising the work done by the motor carriers, and purchasing its own supplies. Considering all of the undisputed facts, we find that Myers

acted as an independent broker in contracting with the motor carriers. *See* Consolidated Freightways, 442 F.2d at 63.

Jackson also argues that an implied agency relationship is shown through the benefit Thomson received from the contracts between Myers and the motor carriers. This argument fails. In any situation where an independent contractor is hired, there is an expectation that the independent contractor will contract with other parties to complete its responsibilities. In the contract between Thomson and Myers, Thomson exchanged payment for services. The services were shipments of goods. Both parties understood that Myers would make separate contracts to execute its promise. The carriage of the goods is not a benefit conferred on a principal, but rather the services for which Thomson paid Myers. Myers was not acting with implied actual authority.

It is Jackson's position that even if no express or implied actual authority is found, apparent authority exists making Thomson liable for payments. Jackson alleges that Thomson created apparent authority by generating and distributing the bills of lading with Thomson's name on it, creating a reasonable reliance by the motor carriers that Myers was acting on Thomson's behalf. In light of the other circumstances surrounding the arrangements between Myers and the motor carriers, however, we find that the bills of lading were not a substantial enough communication for the motor carriers to reasonably believe that Myers was Thomson's agent. Summary judgment on counts I and III is granted for Thomson and denied for Jackson.

### *Quantum Meruit* Claims (Counts II and IV)

In counts II and IV plaintiff alternatively requests that it be granted relief under a theory of "quantum meruit." To recover under this theory Jackson must, at a minimum, show that Thomson received a benefit from the motor carriers and that Thomson is unjustly enriched. Edens View Realty & Investment, Inc. v. Heritage Enterprises, Inc., 87 Ill. App.3d 480, 42 Ill.Dec. 360, 408 N.E.2d 1069. We agree with Jackson that Thomson was benefitted by the motor carriers' transportation of Thomson's goods. We do not agree, however, that Thomson was unjustly enriched. The uncontroverted evidence in the depositions and financial

records from Thomson show that Thomson paid Myers in full for transporting the shipments at issue. Even though Myers never fulfilled its financial responsibility to the motor carriers, equity would not be served by requiring Thomson to pay twice for the same service. Summary judgment on counts II and IV is granted for Thomson and denied for Jackson.

## CONCLUSION

For the above reasons, summary judgment on all counts is granted for defendant Thomson and denied for plaintiff Jackson.

_____
JAMES B. MORAN
Senior Judge, U. S. District Court

Oct. 25, 2001.